STATE of Wisconsin EX REL. William SPEENER, Petitioner-Appellant,

v.

Donald GUDMANSON, Respondent-Respondent.

Court of Appeals

*No. 99–0568. Submitted on briefs December 6, 1999.—Decided March 30, 2000.*

2000 WI App 78

(Also reported in 610 N.W.2d 136.)

461

464

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *William Speener, pro se,* of Daingerfield, Texas.

On behalf of the petitioner-appellant, the cause was submitted on the Memorandum Brief of *Howard B. Eisenberg* of *Marquette University Law School* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Eric J. Callisto,* assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, JJ.

¶ 1. DYKMAN, P.J. William Speener appeals from a circuit court order denying his motion for reconsideration of an order dismissing his petition for a writ of certiorari. On certiorari, Speener seeks reversal of the decision of the warden of Oshkosh Correctional Institution at the time, Donald Gudmanson, affirming the prison adjustment committee's finding that Speener was guilty of using marijuana. Speener argues that the circuit court erred by basing its decision on incorrect information. He also contends that the adjustment committee should not have held a second disciplinary hearing after we remanded the case because the second hearing exceeded the time limits of WIS. ADMIN. CODE § DOC 303.76 and was beyond the scope of our directions on remand. The circuit court's reasoning is not relevant to our review on certiorari and we disagree with Speener's other contentions.

465

Based upon our independent review of the record before the adjustment committee, we affirm.

¶ 2. On appeal, Speener submitted an affidavit of indigency and requested that his filing fees be waived. At the time, he had been transferred to an out-of-state county jail. We conclude that an inmate in an out-of-state county jail is not a "prisoner" for purposes of WIS. STAT. § 814.29 (1997–98).[1] Therefore, we review Speener's request under § 814.29(1) and grant his petition for a fee waiver.

## I. Background

¶ 3. In July 1996, the adjustment committee at Oshkosh Correctional Institution found Speener guilty of using marijuana, in violation of WIS. ADMIN. CODE § DOC 303.59. Speener appealed to the warden, arguing, among other things, that the adjustment committee had denied him the opportunity to present his case by refusing to allow his statement of facts and a set of documents he had compiled in his defense into the record. The warden affirmed the adjustment committee's decision and the circuit court denied Speener's petition for a writ of certiorari.

¶ 4. Speener appealed the circuit court's decision, arguing that the adjustment committee had improperly prohibited him from introducing the documents in his defense at his hearing. *See State ex rel. Speener v. Gudmanson*, No. 97–1762, unpublished slip op. at 2–3 (Wis. Ct. App. Oct. 1, 1998). We reversed because we concluded that the record returned by the adjustment committee was insufficient to determine whether the proceedings before it were procedurally

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

proper. *See id.* at 4. The record did not establish whether Speener had offered the documents, and if he had, why the committee had not considered them. *See id.* at 3. We remanded with the following directions:

> [W]e reverse and remand only for a limited purpose: supplementation of the record concerning the compliance with procedural rules. We remand the case to the circuit court with instructions to remand to the adjustment committee. On remand, the committee shall supplement the record with an indication of whether Speener sought to introduce the documents as he asserts. If he did offer them, the committee must include them in the record and explain why the committee did not accept them. If he did not offer them, the committee should so state.

*Id.* at 4 (citation omitted).

¶ 5. On October 9, 1998, the adjustment committee held another hearing based on our directions on remand. At this hearing, the committee allowed Speener to introduce the statement of facts and documentation that he alleged he had tried to introduce at the original hearing. The committee again found Speener guilty of violating WIS. ADMIN. CODE § DOC 303.59 and the warden affirmed the committee's decision. The Oshkosh Correctional Institution Registrar sent the supplemented record back to the circuit court with a letter stating that Speener did not have his statement of facts and documentation compiled at the time of the original hearing. The Registrar stated that the original hearing took place on July 15, 1996. However, the original disciplinary hearing form indicates that Speener's first hearing took place on July 23, 1996, the same date Speener had on his statement of facts.

¶ 6. On November 19, 1998, the circuit court ordered that Speener's case be dismissed. The court's

only reasoning was that it "appears from the record that the petitioner created, compiled and offered the additional documents *after* the original hearing held on July 15, 1996." Speener filed a motion for reconsideration arguing that: (1) he had been unable to respond to the Registrar's allegation that he compiled his documents after the date of the original hearing because he did not receive the supplemented record until after the circuit court entered its order; (2) the court erred in concluding that he compiled his documents after the original hearing because the hearing took place on July 23, 1996, and not July 15; (3) the adjustment committee's second hearing exceeded the scope of our directions on remand and violated WIS. ADMIN. CODE § DOC 303.76 because it was held over two years after he received the adult conduct report regarding his offense. The circuit court denied the motion for reconsideration and Speener appeals.[2]

¶ 7. Speener has submitted an affidavit of indigency and requested a waiver of the filing fee for his appeal. At the time Speener filed his notice of appeal, although he was still a Wisconsin inmate, he was confined at a county jail in Texas, as permitted by WIS. STAT. § 301.21. Under WIS. STAT. § 814.29(1), we may order that any person who is not a "prisoner," as defined in WIS. STAT. § 801.02(7)(a)2, be allowed to commence an appeal without paying the filing fee if we find that the person is unable to pay the fee because of poverty. However, under § 814.29(1m), a "prisoner"

---

[2] After reviewing jurisdictional memos submitted by the parties, we ordered that we had jurisdiction over the appeal because Speener's motion for reconsideration raised issues different from those determined in the order sought to be reconsidered. *See Silverton Enters. v. General Cas. Co. of Wis.*, 143 Wis. 2d 661, 665, 422 N.W.2d 154 (Ct. App. 1988).

must pay the filing fee from his or her trust fund account. We previously concluded that resolving the issue of whether we should evaluate Speener's request for a fee waiver under § 814.29(1) or § 814.29(1m) depends on whether an inmate confined in an out-of-state county jail is a "prisoner" as defined in § 801.02(7)(a)2. We ordered the parties to submit memoranda on the issue, and we will resolve Speener's request for a fee waiver in this opinion.

## II. Analysis

### A. Fee Waiver

¶ 8. As we have explained, our analysis of Speener's request for a fee waiver turns on whether he was a "prisoner," as defined in WIS. STAT. § 801.02(7)(a)2, at the time he filed the notice of appeal. A person is a prisoner under § 801.02(7)(a)2 if he or she is "incarcerated, imprisoned or otherwise detained in a correctional institution."[3] Section 801.02(7)(a)1 defines "correctional institution" as:

---

[3] WIS. STAT. § 801.02(7)(a)2 provides:

"Prisoner" means any person who is incarcerated, imprisoned or otherwise detained in a correctional institution or who is arrested or otherwise detained by a law enforcement officer. "Prisoner" does not include any of the following:

    a.  A person committed under ch. 980.

    b.  A person bringing an action seeking relief from a judgment terminating parental rights.

    c.  A person bringing an action seeking relief from a judgment of conviction or a sentence of a court, including an action for an extraordinary writ or a supervisory writ seeking relief from a judgment of conviction or a sentence of a court or an action under s. 809.30, 809.40, 973.19 or 974.06.

    d.  A person bringing an action under s. 809.50 seeking relief from an order or judgment not appealable as of right that was

[A]ny state or local facility that incarcerates or detains any adult accused of, charged with, convicted of, or sentenced for any crime. A correctional institution includes a Type 1 prison, as defined in s. 301.01(5), a Type 2 prison, as defined in s. 301.01(6), a county jail and a house of correction.

Thus, in order to resolve whether Speener was a "prisoner" for purposes of WIS. STAT. § 814.29, we must determine whether an out-of-state county jail meets the definition of "correctional institution" provided in § 801.02(7)(a)1.

¶ 9.   Statutory construction presents a question of law that we review de novo. *See State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177 (Ct. App. 1992). When we interpret a statute, our purpose is to ascertain the intent of the legislature and give it effect. *See id.* Our first step is to examine the language of the statute, and, absent ambiguity, give the language its ordinary meaning. *See id.* at 225–26. If the language is ambiguous, we examine the scope, history, context, subject matter and purpose of the statute in order to determine the legislative intent. *See id.* at 226. "Statutory language is ambiguous if reasonable people could disagree as to its meaning." *Id.*

¶ 10.   We conclude that the words "any state or local facility," as used in the definition of "correctional facility" in WIS. STAT. § 801.02(7)(a)1, are ambiguous. We cannot determine from the words alone whether

entered in a proceeding under ch. 980 or in a case specified under s. 809.30 or 809.40.

e.   A person who is not serving a sentence for the conviction of a crime but who is detained, admitted or committed under ch. 51 or 55 or s. 971.14 (2) or (5).

the legislature intended "any state or local facility" to apply to an out-of-state county jail. A reasonable person might conclude that the words "any state or local facility" refer to facilities operated by the State of Wisconsin or by political subdivisions of the State of Wisconsin. However, it would also be reasonable to conclude that the use of the word "any" demonstrates that "state or local facility" refers to facilities operated by any state or the political subdivisions of any state. Therefore, we will use other tools of statutory construction to ascertain the legislative intent.

¶ 11. Construing the words "any state or local facility" within their context in WIS. STAT. § 801.02(7)(a)1, we conclude that the legislature did not intend the definition of "correctional institution" to apply to out-of-state facilities. When a general term, such as "any state or local facility," "is preceded or followed by a series of specific terms, the general term is viewed as being limited to items of the same type or nature as those specifically enumerated." *State v. Campbell*, 102 Wis. 2d 243, 246, 306 N.W.2d 272 (Ct. App. 1981). In § 801.02(7)(a)1 the term "any state or local facility," is followed by this sentence: "A correctional institution includes a Type 1 prison, as defined in s. 301.01(5), a Type 2 prison, as defined in s. 301.01(6), a county jail and a house of correction." This sentence lists specific types of correctional facilities found in Wisconsin. While county jails and houses of correction are used in other states as well, when words are associated, they should ordinarily be understood in the same general sense. *See State v. Johnson*, 171 Wis. 2d 175, 181, 491 N.W.2d 110 (Ct. App. 1992). In this case, "county jail" and "house of correction" are coupled with "Type 1" and "Type 2" prisons, facilities that are

specific to Wisconsin since they are defined by statute.[4] Furthermore, the sentence does not contain any reference to types of facilities that might be used in other states, but not in Wisconsin. Considering that the specific list of correctional facilities given in the statute refers only to facilities found in Wisconsin, we conclude that the term "any state or local facility" is also limited to Wisconsin facilities.

¶ 12. Gudmanson argues that the use of the word "includes" in the second sentence of WIS. STAT. § 801.02(7)(a)1 demonstrates that the list was meant to be illustrative and not exclusive. Thus, he contends that the term "any state or local facility" is not limited to Wisconsin facilities by the specific list. We disagree. While the second sentence of § 801.02(7)(a)1 does not necessarily exclude unlisted facilities from the definition of a "correctional institution," it does indicate that the definition is limited to facilities found in Wisconsin. Section 801.02(7)(a)1 contains no reference to out-of-state facilities, and the second sentence refers only to facilities found in Wisconsin. By including the second sentence, the legislature demonstrated its intent to limit the definition to Wisconsin facilities.

¶ 13. Gudmanson contends that the Prisoner Litigation Reform Act (PLRA), 1997 Wis. Act 133, under which WIS. STAT. § 801.02(7)(a) was created, was

---

[4] "Type 1" and "Type 2" prisons are defined in WIS. STAT. § 301.01(5) and (6). In addition, several Wisconsin statutes use the terms "county jail" and "house of correction." *See, e.g.,* WIS. STAT. §§ 302.18, 302.31, 302.315, 302.33, 302.365 and 302.45. Although these statutes do not define those terms, they use them in a context indicating that they are referring to Wisconsin facilities. For example, the same statutes use the term "department," referring to the Department of Corrections. *See* § 301.01(1).

intended to reduce prisoner litigation. He points out that the PLRA expanded the requirement under § 801.02(7)(b) that a prisoner must exhaust all administrative remedies before filing suit, and created WIS. STAT. § 814.29(1m), requiring prisoners to pay filing fees. *See* 1997 Wis. Act 133, §§ 11 and 35. Gudmanson also explains that WIS. STAT. § 301.21, the statute authorizing the transfer of Wisconsin prisoners out of state, existed at the time the legislature enacted the PLRA. He asserts that we must assume that the legislature knew the laws in effect at the time it passed the PLRA, *see Roberta Jo W. v. Leroy W.*, 218 Wis. 2d 225, 233, 578 N.W.2d 185 (1998), and that the legislature contemplated that Wisconsin would be sending prisoners to out-of-state facilities at the time it created the restrictions on prisoner litigation. He contends that the legislature would not have intended to require in-state prisoners to exhaust administrative remedies and pay filing fees, but not out-of-state prisoners. Gudmanson argues that the legislature changed the definition of "prisoner" used in § 801.02(7) in order to account for prisoners who might be transferred to another state.[5]

¶ 14.　We disagree with Gudmanson's contentions. WISCONSIN STAT. § 301.21(1m) and (2m) authorizes the Department of Corrections to enter into

---

[5] Gudmanson points out that, prior to the PLRA, WIS. STAT. § 801.02(7) defined prisoner by reference to WIS. STAT. § 301.01(2). Section 801.02(7) (1995–96). Section 301.01(2) provides, in part: " '[p]risoner' means any person who is either arrested, incarcerated, imprisoned or otherwise detained in excess of 12 hours by any law enforcement agency *of this state. . . .*" Section 301.01(2) (1995–96) (emphasis added). The PLRA added the definitions of "prisoner" and "correctional facility" discussed in this opinion to § 801.02(7) and removed the reference to § 301.01(2). *See* 1997 Wis. Act 133, §§ 11–12.

contracts with other states, political subdivisions of other states or private persons for the transfer of prisoners. The legislature created § 301.21(2m), authorizing the department to enter into a contract with private persons, before it enacted the PLRA. *See* 1997 Wis. Act 27, § 3830r; 1997 Wis. Act 133. Thus, the legislature knew that Wisconsin prisoners could be transferred to private facilities at the time it enacted the PLRA. However, the use of the words "any state or local facility" unambiguously demonstrates the legislature's intent to exclude privately-run facilities from the definition of "correctional institution" in WIS. STAT. § 801.02(7)(a)1. The legislature did not intend the restrictions of the PLRA to apply to all prisoners no matter where they are confined. "Correctional institution," as defined in § 801.02(7)(a)1 does not include out-of-state or private facilities.

¶ 15. Finally, Gudmanson points out that WIS. STAT. § 801.02(7)(a)2.a-e contains a list of people who are excluded from the definition of "prisoner." He argues that had the legislature intended to exclude people confined in out-of-state county jails from the definition of prisoner it would have added such an exclusion to the list. However, there is no need to add people confined in out-of-state facilities to the list of exclusions if they are already excluded by the definitions of "prisoner" and "correctional institution" themselves. In addition, the exclusions listed in § 801.02(7)(a)2.a, c, d and e all make exceptions to the definition of "prisoner" based on specific provisions in the Wisconsin Statutes. The fact that all but one of the exceptions under § 801.02(7)(a)2 are specific to Wisconsin further demonstrates the legislature's intent to

limit the definitions of "prisoner" and "correctional institution" to Wisconsin.[6]

■

¶ 16.   Since the definition of "correctional institution" in WIS. STAT. § 801.02(7)(a)1 does not include an out-of-state county jail, Speener was not a "prisoner" under § 801.02(7)(a)2 at the time he filed his notice of appeal. Therefore, we evaluate his request for a fee waiver under WIS. STAT. § 814.29(1). Upon reviewing his affidavit of indigency, we conclude that Speener satisfies the conditions for a waiver under that section. Accordingly, we order that Speener's petition for a fee waiver is granted.[7]

## B.   Merits of the Appeal

¶ 17.   Speener argues that the trial court erred when it dismissed his case, because it based the dismissal on incorrect information regarding the date of his original hearing. He contends that he did not compile the documents in his defense after his original hearing date because the hearing was held on July 23, 1996, and not July 15. Speener also asserts that the adjustment committee should not have held a new hearing on remand because the new hearing exceeded the time

---

[6] WISCONSIN STAT. § 801.02(7)(a)2.b creates an exception to the definition of "prisoner" for "[a] person bringing an action seeking relief from a judgment terminating parental rights." While this exception does not refer to the Wisconsin Statutes as do the other exceptions, neither does it demonstrate that the definition of "prisoner" should include people confined in out-of-state facilities.

[7] This is a waiver of the filing fee only in the Court of Appeals. It is not a determination of indigency for any other purpose.

limits in WIS. ADMIN. CODE § DOC 303.76 and was beyond the scope of our directions.

¶ 18.   On certiorari, we review the decision of the prison adjustment committee independently of the trial court. *See State ex rel. Whiting v. Kolb*, 158 Wis. 2d 226, 233, 461 N.W.2d 816 (Ct. App. 1990). Our review is limited to: (1) whether the committee's decision was within its jurisdiction; (2) whether it acted according to law; (3) whether its decision was arbitrary, oppressive or unreasonable and represented the committee's will and not its judgment; and (4) whether the evidence was sufficient to demonstrate that the committee's decision was reasonable. *See id.* In reviewing the evidence, we apply the substantial evidence test, "under which we determine whether reasonable minds could arrive at the same conclusion the committee reached." *Id.* "Our review is limited to the record created before the committee." *Id.*

¶ 19.   Gudmanson concedes that the trial court misunderstood the date of the original hearing. However, since we review the decision of the adjustment committee independently of the trial court, the basis on which the trial court rested its decision is not relevant.

¶ 20.   We conclude that the adjustment committee stayed within its jurisdiction and did not act contrary to law. We do not agree that the committee exceeded the time limits imposed by WIS. ADMIN. CODE § DOC 303.76 when it held the hearing on remand. WIS CONSIN ADMIN. CODE § DOC 303.76(3) provides:

> TIME LIMITS. A due process hearing shall be held no sooner than 2 working days or later than 21 days after the inmate receives a copy of the conduct report and hearing notice. An inmate may waive

476

these time requirements in writing if the security director agrees to the waiver. The inmate may request additional time to prepare for the hearing, and the security director shall grant the request unless there is a good reason to deny it.

In this case, the hearing on remand occurred over two years after Speener received his conduct report and hearing notice. However, Speener waived the twenty-one day time limit on his notice of hearing form, as allowed by WIS. ADMIN. CODE § DOC 303.76(3). In addition, the new hearing took place after Speener petitioned the circuit court for a writ of certiorari and appealed the circuit court's decision, and after we remanded the case so that the record could be supplemented. Considering the time involved in judicial proceedings, we do not agree that the twenty-one day limit applies to hearings held on remand.

¶ 21.   We also do not agree that the adjustment committee exceeded the scope of our directions on remand. We remanded the case so that the committee could supplement the record with either the documents Speener offered in his defense or with a statement that Speener had not offered the documents at the original hearing. The committee followed our instructions and made Speener's documents part of the record at the rehearing. It did not accept any additional evidence other than that which it reviewed at the original hearing in 1996. The committee did not exceed our instructions when it reaffirmed its finding of guilt at the hearing on remand based on its review of Speener's documents along with the evidence before it at the original hearing.

¶ 22.    Based on our review of the record before the committee on remand, we conclude that the committee's decision was not arbitrary, oppressive or unreasonable and that the evidence satisfies the substantial evidence test. The committee reviewed the computerized results of a urinalysis test indicating that Speener had tested "high" for "cannabinoids." Speener submitted a different read-out indicating that he tested at 130.3, and a urinalysis report indicating that he had "tested positive for cannabinoid." He also submitted the chain of evidence log for his urinalysis showing only one person as handling his urine specimen, indicating that Speener had taken some medicine in the seventy-two hours before the test, and indicating that a result of 130.3 amounted to a positive test for cannabinoids. Finally, he submitted a chain of evidence log for another inmate's urinalysis test showing entries for a number of people who handled the urine specimen, the Department of Corrections internal memo on urinalysis testing, a letter denying him access to the urinalysis machine manual, and the Department of Corrections' mission statement. Based on the urinalysis results, reasonable people could conclude that Speener had used marijuana despite the fact that he had taken medicine in the seventy-two hours before the test and that his chain of evidence log contained only one entry.

¶ 23.    Speener also contends that his due process rights, under the Fourteenth Amendment to the United States Constitution and article I, sections 1 and 8 of the Wisconsin Constitution, were violated because: (1) he was not provided sufficient notice of the hearing on remand; (2) he was not allowed to present witnesses; (3) he was denied a second urinalysis test to confirm

the results of the first; and (4) the prison did not follow proper procedure in processing his urine sample. However, Speener has appealed only from the order denying his motion for reconsideration. He did not raise any of these issues in that motion and, generally, we do not consider issues that were not raised before the trial court. *See Greenlee v. Rainbow Auction / Realty Co.*, 202 Wis. 2d 653, 672, 553 N.W.2d 257 (Ct. App. 1996). We see no compelling reason to address these issues on appeal.

¶ 24.  For the reasons discussed above, we order that Speener's petition for a fee waiver is granted and we affirm the circuit court's order denying Speener's motion for reconsideration.

*By the Court.*—Order affirmed.