STATE of Wisconsin EX REL. Kim J. BARKSDALE,
Petitioner-Appellant,

v.

Jon LITSCHER and Fred Figueroa, Respondents-
Respondents.

Court of Appeals

*No. 03–0841. Submitted on briefs October 14, 2003.—Decided
June 17, 2004.*

2004 WI App 130

(Also reported in 685 N.W.2d 801.)

493

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Kim Barksdale*, pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Bruce D. Huibregtse* and *Christopher T. Sundberg* of *Stafford Rosenbaum LLP*, Madison.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. DEININGER, P.J. Kim Barksdale appeals an order dismissing his certiorari petition. He claims the circuit court erred in concluding that, under the doctrine of claim preclusion, the present action was precluded by a state court judgment entered in Tennessee. We conclude that the circuit court correctly determined that the Tennessee judgment bars Barksdale's current claims. Accordingly, we affirm the appealed order.

## BACKGROUND

¶ 2. Barksdale, a Wisconsin inmate housed at a correctional facility in Whiteville, Tennessee, was involved in incidents for which he received two separate

disciplinary reports.[1] The disciplinary board at-Whiteville found Barksdale guilty, imposed punishment of two consecutive periods of thirty days in adjustment segregation, and made a referral for administrative segregation.

¶ 3. Barksdale pursued administrative appeals within the facility but they were unsuccessful. He then filed a Petition for Writ of Certiorari challenging various aspects of the disciplinary proceedings in the circuit court for Hardeman County, Tennessee. His petition named the Whiteville warden and two other Whiteville employees as respondents. While the Tennessee action was pending, Barksdale filed a Petition for Writ of Certiorari in Dane County seeking review of the same proceedings that resulted in his receiving sanctions for the two offenses at Whiteville. The Dane County petition named the Whiteville warden and the Secretary of the Wisconsin Department of Corrections (DOC) as respondents.

¶ 4. About four weeks after Barksdale filed his Dane County petition, the Tennessee court issued an order dismissing the Tennessee action because "a thirty-day sentence of disciplinary segregation does not impose an atypical and significant hardship in relation to ordinary incidents of prison life." Some two weeks later, the DOC certified and filed the administrative record of Barksdale's disciplinary proceedings at Whiteville in the Wisconsin case, but the return on the writ did not mention the Tennessee certiorari action. When the DOC secretary filed his substantive brief in response to Barksdale's Wisconsin petition, however, he

---

[1] After he filed this action in the circuit court, Barksdale was transferred to a Wisconsin correctional institution, but that fact is not relevant to our analysis or disposition.

included a certified copy of the Tennessee judgment and a copy of Barksdale's certiorari petition to the Tennessee court. Both the secretary and the warden argued that, under the doctrine of claim preclusion, the judgment in the Tennessee action precluded Barksdale's Wisconsin certiorari action.

¶ 5. The circuit court agreed and dismissed Barksdale's certiorari petition. He appeals the dismissal order.

## ANALYSIS

¶ 6. Barksdale claims that the circuit court erred in dismissing his certiorari petition on claim preclusion grounds because the warden[2] did not timely raise the issue of claim preclusion, thus waiving this defense, and because the requirements for applying claim preclusion are not present in this case. We disagree with both of Barksdale's contentions.

¶ 7. Generally, on an appeal of the circuit court's order granting or denying relief in a certiorari action, we review the underlying decision of the administrative agency, not that of the circuit court. *See State ex rel. Sprewell v. McCaughtry*, 226 Wis. 2d 389, 393, 595 N.W.2d 39 (Ct. App. 1999). Here, however, the dispositive issues do not involve the correctness of the administrative proceedings and determination, but the interpretation of the rules of civil procedure and the application of the claim preclusion doctrine, issues that

---

[2] Only the Whiteville warden has filed a responsive brief on appeal. The DOC secretary informed us that he joins in the warden's arguments. We will refer in the remainder of this opinion to the respondents collectively as "the warden" except when it is necessary to differentiate the individual respondents.

first arose in the circuit court. Accordingly, it is the decision of the circuit court to dismiss Barksdale's petition without reaching its merits that is before us. Whether the circuit court correctly interpreted the procedural statutes and applied the doctrine of claim preclusion are questions of law that we review de novo. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997) (statutory interpretation); *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995) (claim preclusion).

¶ 8. The warden initially moved to dismiss Barksdale's Wisconsin certiorari petition and to quash the writ on the grounds that (1) the petition was untimely, (2) Barksdale had not shown he had exhausted administrative remedies, and (3) the petition failed to state a claim against the warden. The circuit court denied the warden's motion and directed him to address the merits of Barksdale's claims of error in the administrative proceedings.[3] The warden then raised the issue of claim preclusion for the first time when he filed his substantive brief, some nine months after Barksdale had filed his Wisconsin petition.

---

[3] The warden does not argue on appeal that the court erred in denying his motion to dismiss and quash, which was largely grounded on procedural requirements set forth in the Wisconsin Prisoner Litigation Reform Act (WPLRA). *See State ex rel. Speener v. Gudmandson*, 2000 WI App 78, ¶ 16, 234 Wis. 2d 461, 610 N.W.2d 136 (concluding that Wisconsin inmates incarcerated at out-of-state facilities are not "prisoners" within the meaning of the WPLRA). We also note that the DOC secretary separately argued in the circuit court that he should be dismissed as a respondent because he "had no participation in finding Barksdale guilty of CCA-Whiteville rules." The court declined to dismiss the secretary from the action.

¶ 9. Barksdale argues that this was too late to raise a claim preclusion defense because, under WIS. STAT. § 802.06(7) (2001–02),[4] the defense was required to be raised in the motion to dismiss that the warden had previously filed. Section 802.06(7) provides as follows:

> A party who makes a motion under this section may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this section but omits therefrom any defense or objection then available to the party which this section permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, *except a motion as provided in sub. (8)(b) to (d) on any of the grounds there stated.*

(Emphasis added.) Barksdale notes, correctly, that the defense of claim preclusion (or "res judicata") is among those permitted to be raised by motion under § 802.06(2)(a). The flaw in Barksdale's argument, however, is that claim preclusion is also one of the defenses excepted from the waiver rule by the language we have emphasized above.

¶ 10. Under WIS. STAT. § 802.06(8)(b), the defense of claim preclusion "may be made . . . by motion before entry of the final pretrial conference order." Barksdale would have us ignore this provision because certiorari proceedings are specifically excluded from the applicability of WIS. STAT. § 802.10, which, among other things, authorizes a "pretrial conference" in most other civil actions. *See* § 802.10(1). In Barksdale's view, because "pretrial conferences" are not conducted in certiorari proceedings, the exception in § 802.06(8)(b) that permits

---

[4] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

a motion raising claim preclusion to be filed at any time "before entry of the final pretrial conference order" should not apply in certiorari. Thus, according to Barksdale, the warden irrevocably waived the defense of claim preclusion by virtue of § 802.06(7) when he failed to include that defense in his earlier motion under § 802.06(2).

¶ 11. We reject Barksdale's proffered interpretation as being unreasonable. In actions in which a"pretrial conference" is authorized and employed, the cutoff point for raising claim preclusion by motion is "the entry of the final pretrial conference order," regardless of whether a motion under WIS. STAT. § 802.06(2) was previously filed. *See* § 802.06(8)(b). The plain import of the rule is that a party must be allowed to raise claim preclusion by motion long after having unsuccessfully moved to dismiss on other grounds. It would thus be unreasonable to read the rule as creating no similar opportunity for respondents in certiorari proceedings, as Barksdale contends, simply because the court does not conduct a pretrial conference. We conclude it would be equally unreasonable, however, to hold that, because no "final pretrial conference order" will ever be entered, no time limit of any kind exists for a certiorari respondent, who, after having moved to dismiss on other grounds, wishes to raise a claim preclusion defense. Just as the rule plainly provides an exception for claim preclusion from the waiver rule of § 802.06(7), it also requires that the issue be brought to the court's attention before the court addresses the merits of the dispute.

¶ 12. Accordingly, we agree with the trial court that the only reasonable reading of WIS. STAT. § 802.06, as applied to certiorari proceedings, is that a party who has unsuccessfully moved to dismiss on other grounds

may still seek dismissal grounded on claim preclusion at any time before the court has considered the merits of the petitioner's claims. Here, the warden did so by raising claim preclusion in his brief responding to the substance of Barksdale's petition, thereby avoiding a waiver of the issue, notwithstanding his earlier motion to dismiss.[5]

¶ 13. Barksdale next argues that, even if the circuit court properly allowed the warden to raise claim preclusion as a defense, the defense must fail because all of the elements for claim preclusion are not present. The burden of proving claim preclusion is upon the party asserting its applicability. *Alexopoulos v. Dakouras*, 48 Wis. 2d 32, 37, 179 N.W.2d 836 (1970). There are three requirements for claim preclusion to apply:

> In order for the earlier proceedings to act as a claim-preclusive bar in relation to the present suit, the following factors must be present: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction.

*Northern States Power Co.*, 189 Wis. 2d at 551.

¶ 14. The first question we must address is whether there is identity between the parties "or their privies" in the Tennessee and Wisconsin certiorari ac-

---

[5] We note that Barksdale asked for an extension of time to file his reply brief citing as a reason, among others, his need to address the warden's newly-raised claim preclusion defense. The court allowed Barksdale an additional month to file his reply brief, in which he countered the warden's assertion of claim preclusion.

tions. "Privity exists when a person is so identified in interest with a party to former litigation that he or she represents precisely the same legal right in respect to the subject matter involved." *Pasko v. City of Milwaukee*, 2002 WI 33, ¶ 16, 252 Wis. 2d 1, 643 N.W.2d 72. Privity compares the interests of a party to a first action with a nonparty to determine whether the first action protected the interests of the nonparty. *Id.*, ¶ 18. Here, the only Wisconsin party who was not a party in the Tennessee action was the DOC secretary. Barksdale named the Whiteville warden as a respondent in both actions, and the question thus becomes whether the warden and the secretary had identical legal interests to protect in both actions. We conclude that they did. The objective of the warden and the secretary in either case was to have the disciplinary actions taken against Barksdale at Whiteville upheld, and Barksdale has identified no interest of the secretary's that went unprotected in the Tennessee action.

¶ 15. The second requirement for claim preclusion to apply is that there be identity between the causes of action in both cases. Wisconsin applies a transactional approach to the determination of whether two suits involve the same cause of action. *See Northern States Power Co.*, 189 Wis. 2d at 553. "[I]f both suits arise from the same transaction, incident or factual situation, [claim preclusion] generally will bar the second suit." *Id.* at 554 (quoting *Pliska v. City of Stevens Point*, 823 F.2d 1168, 1172 (7th Cir. 1987). The number of substantive theories that may be available to the plaintiff is immaterial if they all arise from the same factual underpinnings: all are barred from future consideration unless brought in the same action. *Id.* at 555 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. a (1982)).

¶ 16. Here, of course, the same facts underlie each of the petitions. Barksdale bases both on the two citations he received at Whiteville and the subsequent disciplinary actions taken on them. Barksdale argues, however, that we may not conclude that the Tennessee and Wisconsin actions were identical because of certain issues he has raised in Wisconsin that he claims he could not have raised in Tennessee because the court there lacked "jurisdiction" to entertain them. These "Wisconsin-only" issues include Barksdale's claims that the Whiteville disciplinary proceedings violated certain DOC regulations and his federal constitutional right to equal protection of the laws. We reject Barksdale's attempt to differentiate the Tennessee and Wisconsin court actions on these bases.

¶ 17. First, as to his contention that he could not have asserted his claim in Tennessee that Whiteville staff violated DOC regulations governing prison disciplinary actions, even if the contention is accurate, it does not alter the fact that both actions arise from the very same transactions—the allegations of his misconduct at Whiteville and the administrative actions that resulted. Moreover, we note that these claims are equally unavailable to Barksdale in the Wisconsin action. WISCONSIN STAT. § 301.21(2m)(b) provides that "[w]hile in an institution in another state covered by a contract under this subsection, Wisconsin prisoners are subject to all provisions of law and regulation concerning the confinement of persons in that institution under the laws of that state," and WIS. STAT. § 302.18(5) that "[a]ny person who is legally transferred by the department to a penal institution shall be subject to the same statutes, regulations and discipline as if the person had been originally sentenced to that institution." In other

words, the legislature has mandated that, except for matters affecting the length of Barksdale's sentence, all "day-to-day" aspects of his custody and confinement (in particular, "the conditions of confinement and procedures used in the out-of-state institution") are to be governed by applicable Tennessee statutes and regulations. *See State ex rel. Griffin v. Litscher,* 2003 WI App 60, ¶¶ 13, 15, 261 Wis. 2d 694, 659 N.W.2d 455. Thus, any claim by Barksdale based on the Whiteville staff's alleged violation of Wisconsin statutes or regulations would be as unavailing in the instant action as they may have been in his Tennessee action.

¶ 18. We also find no merit in Barksdale's contention that he could not have raised a federal constitutional challenge on equal protection grounds to the imposition of sanctions for his misconduct in the Tennessee proceeding because the court there lacked "jurisdiction" over such a claim. Under Article VI of the U.S. Constitution, the Constitution "shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." Circuit courts in Tennessee, as in Wisconsin, are courts of general jurisdiction, empowered to entertain all causes or claims for which "jurisdiction is not conferred upon another tribunal." *See* TENN. CODE ANN. § 16–10–101 (2004). Tennessee circuit courts are specifically empowered to issue writs of certiorari, TENN. CONST. art. VI, § 10, and when doing so, they must determine whether an administrative decision was reached "in a constitutional or lawful manner." *Powell v. Parole Eligibility Review Bd.,* 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994).

¶ 19. Finally, we note that WIS. STAT. § 302.02(3t) specifically directs that courts sitting in the state and county where a Wisconsin inmate is housed are to have jurisdiction over disciplinary matters regarding the inmate:

> For all purposes of discipline and for judicial proceedings, each institution that is located in another state and authorized for use under s. 301.21 and its precincts are considered to be in the county in which the institution is physically located, and the courts of that county shall have jurisdiction of any activity, wherever located, conducted by the institution.

*Id.* In sum, we can find no jurisdictional impediments to any arguably meritorious claim Barksdale may have wished to raise in his Tennessee certiorari petition challenging the imposition of sanctions for his misconduct at Whiteville. We are thus satisfied that the "identity of causes of action" requirement for applying claim preclusion is met on this record.

¶ 20. The third and final element of claim preclusion is a final judgment on the merits in the prior suit. That element is certainly present here, given that the Tennessee court entered a written order dismissing Barksdale's certiorari petition on the grounds that he was not entitled to the relief he sought. Barksdale notes, however, that the Tennessee court based its decision on the fact that the adjustment segregation he received as a sanction was not "an atypical and significant hardship in relation to the ordinary incidents of prison life," and thus, the sanction could be imposed without observing constitutional due process requirements. *See Sandin v. Conner*, 515 U.S. 472, 483–84

(1995).[6] Barksdale contends, and the warden concedes, that certiorari review in Wisconsin would require a court to go a step further and apply certain common-law standards for upholding an administrative action, even if no constitutional liberty interest were at stake. *See, e.g., State ex rel. Curtis v. Litscher*, 2002 WI App 172, ¶ 15, 256 Wis. 2d 787, 650 N.W.2d 43, *review*

---

[6] Barksdale received no loss of good time or extension of his mandatory release date as a result of the Whiteville disciplinary proceedings. He asserts, however, that he *could* have received these additional sanctions. The DOC has informed us in another appeal, however, that Wisconsin inmates *cannot* lose good time or have their mandatory release dates extended as a result of discipline imposed at out-of-state facilities. In its brief filed in *State of Wisconsin ex rel. Myers v. Swenson*, No. 03–2406, the department points to the fact that WIS. STAT. § 302.11(2)(a) authorizes a loss of good time or mandatory release extension for the violation of regulations of a "prison," but notes that out-of-state facilities are not among the "prisons" enumerated in WIS. STAT. § 302.01. It also notes that, under WIS. ADMIN. CODE § DOC 303.01(1), "[t]he department may not discipline an inmate for an incident for which the inmate was disciplined in another jurisdiction." Thus, the department contends in *Myers* that an "out-of-state inmate has an advantage over the in-state inmate: his misconduct there will not prolong the duration of his time behind bars, but misconduct here will. The misconduct might result in his return to Wisconsin, perhaps to less desirable confines, but it will not extend the duration of confinement." We have no reason to doubt the department's contentions inasmuch as they are consistent with our analyses in *State ex rel. Griffin v. Litscher*, 2003 WI App 60, ¶¶ 13, 15, 261 Wis. 2d 694, 659 N.W.2d 455, and *Speener*, 234 Wis. 2d 461, ¶ 16, regarding the applicability of related Wisconsin statutes to Wisconsin inmates while housed outside the state. We thus also have no reason to question the correctness of the Tennessee court's reliance on the holding in *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995), in disposing of Barksdale's petition.

*denied,* 2002 WI 121, 257 Wis. 2d 118, 653 N.W.2d 890 (Wis. Sep. 26, 2002) (No. 01–1804).

¶ 21. Barksdale advances two reasons why the fact that an in-state Wisconsin inmate may obtain more rigorous judicial review of discipline imposed for misconduct in a Wisconsin prison than what he obtained in the Tennessee court should preclude the dismissal of his Wisconsin petition on claim preclusion grounds. The first is that the different standards for reviewing prison disciplinary actions between Wisconsin and Tennessee constitutes an equal protection violation in that he is being treated differently than in-state Wisconsin prisoners without a rational basis for doing so. The second is that the different certiorari standards creates a "unique circumstance" that entitles him to pursue relief in a Wisconsin court as the petitioners in *Curtis,* who had also been housed at Whiteville, were permitted to do. Again, we disagree on both points.

¶ 22. As we have already noted, we have found nothing that would have precluded Barksdale from raising any federal constitutional claims, including an alleged equal protection violation, in his Tennessee certiorari action. And, if the Tennessee circuit court failed to adequately address his claims, or decided them incorrectly, Barksdale's proper remedy was to appeal the Tennessee decision, not to bring a new action in Wisconsin. A primary purpose of the claim preclusion doctrine is to require litigants to raise in a single action any and all grounds for relief stemming from a given transaction, rather than engaging in serial litigation on a one-issue-at-a-time basis. When the Tennessee action ended with a final judgment or order on the merits by a court with jurisdiction over Barksdale's claims, so did Barksdale's ability to pursue any further claims relating to the disciplinary sanctions he received. He cannot

raise a new issue here and argue that it provides a basis to avoid the preclusive effect of the prior judgment.

¶ 23. Finally, our conclusion in *Curtis*, that the petitioners there should have access to a Wisconsin court to pursue certiorari review of discipline imposed at Whiteville, is of no assistance to Barksdale. The "unique circumstance" that existed in *Curtis* was that, because the petitioners had been transferred back to Wisconsin institutions before filing for judicial review in Tennessee, the Tennessee court refused to entertain their petitions. *See Curtis*, 256 Wis. 2d at ¶¶ 6, 12–13. Here, of course, Barksdale was not denied access to a Tennessee court to have his discipline reviewed. He received from the Tennessee court precisely what the *Curtis* petitioners were denied: judicial review of the merits of his claim that he had been improperly subjected to disciplinary sanctions. We conclude that the fact that Tennessee's law may differ from Wisconsin's regarding the scope or standards for review of such claims is not the equivalent of a denial of all access to a court in Tennessee. We thus also conclude that a "unique circumstance" is not present that would permit Barksdale to gain access to a second forum for litigating his claims.[7]

---

[7] We note that our analysis in *Curtis* did not involve the doctrine of claim preclusion, but the DOC secretary's claim that, by virtue of Wis. Stat. § 302.02(3t), a Wisconsin court lacks competency to review the imposition of discipline on a Wisconsin inmate housed at an out-of-state facility. *State ex rel. Curtis v. Litscher*, 2002 WI App 172, ¶¶ 11–12, 256 Wis. 2d 787, 650 N.W.2d 43, *review denied,* 2002 WI 121, 257 Wis. 2d 118, 653 N.W.2d 890 (Wis. Sep. 26, 2002) (No. 01–1804). The warden makes the same argument in this appeal as an alternative rationale for upholding the circuit court's dismissal of Barksdale's petition. Because we conclude that the court did not

## CONCLUSION

¶ 24. For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.

err in dismissing this action on claim preclusion grounds, we do not address the warden's alternative argument.